UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

DIGITAL-VENDING SERVICES
INTERNATIONAL, LLC,

§
§
§
§

        Plaintiff,

§
§
§

v.

§
§

THE UNIVERSITY OF PHOENIX, INC.,
APOLLO GROUP, INC., and
CAPELLA EDUCATION COMPANY,

§
§
§
§
§

        Defendants.

§
§
§

Civil Action No. _____

[Case pending in the U.S. District Court for
The Eastern District of Virginia, Case No.
2:09-cv-555]

## DVSI'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH THIRD PARTY SUBPOENA OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER

In accordance with Fed. R. Civ. P. 26(c) and 45(c)(3), Plaintiff Digital-Vending Services International, LLC ("DVSI"), by counsel, respectfully submits this Memorandum of Points and Authorities in support of its Motion to Quash or, in the Alternative, Motion for Protective Order as to the third party subpoena issued by The University of Phoenix, Inc. (the "University of Phoenix"), Apollo Group, Inc. ("Apollo"), and Capella Education Company ("Capella") (all collectively, "Defendants") to Walden University, Inc. ("Walden").

### INTRODUCTION

DVSI brought a patent infringement action against the University of Phoenix, Apollo, Capella, and Walden that is presently pending in the U.S. District Court for the Eastern District of Virginia, Case No. 2:09-cv-555. On or about May 6, 2010, DVSI and Walden entered into a confidential settlement agreement (which contained a confidential

licensing provision) and, as a result, the Court dismissed, with prejudice, all of DVSI's claims against Walden and all of Walden's counterclaims against DVSI.

On June 3, 2010, Defendants issued a subpoena *duces tecum* to Walden (the "Subpoena") seeking: (1) all communications with DVSI relating to any settlement agreement or licensing agreement, including negotiations thereof, entered into and between Walden and DVSI related to the lawsuit, and all notes reflecting these communications; and (2) all contracts, license agreements, or other types of agreements, whether in draft form or final, relating to any settlement agreement entered into between Walden and DVSI related to the lawsuit  A true and correct copy of the subpoena is attached hereto as Exhibit A.[1]

The subpoena calls for the production of all these confidential settlement documents by June 14, 2010.  DVSI moves to quash the subpoena or, in the alternative, seeks a protective order because the subpoena solely calls for the production of confidential settlement materials that are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.  As such, they are not discoverable.

## ARGUMENT

Defendants are seeking these confidential settlement documents in order to attempt to prove the value of a reasonable royalty under the patents at issue.[2]  These

---

[1]      Capella had previously issued a subpoena *duces tecum* to Walden that was withdrawn because it did not comply with Rule 45(a)(2)(c).

[2]      Doug Williams, counsel for Capella, the sole party requesting the subpoena in its first iteration, admitted in a meet and confer with DVSI's counsel and the University of Phoenix and Apollo's counsel that the sole reason these materials are being sought from Walden is for use in showing what Capella believes is a reasonable royalty for its use of the patents in suit.  In that same conference, Lauren Hoffer, counsel for the University of Phoenix and Apollo, now parties to the reissued subpoena, gave no indication that she was seeking the subpoenaed materials for any purpose other than to argue a reasonable

settlement materials are inadmissible under Rule 408 of the Federal Rules of Evidence ("FRE"), as well as FRE 401 and 402.  Moreover, because of the likelihood of confusion and undue prejudice if viewed by a jury, these confidential settlement documents also are inadmissible under FRE 403.  Because these confidential settlement documents are not admissible, they are not discoverable under Rule 26(b)(1).

Other courts that have examined this issue in similar contexts have concluded that settlement and license agreements entered between parties litigating a patent dispute are irrelevant and inadmissible to prove the value of a reasonable royalty.  In *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, 2010 WL 1727916 (E.D.Tex. Apr. 28, 2010), the district court recently granted a motion *in limine* excluding a patent litigation settlement agreement and related license agreement.  In connection with its ruling, the *Fenner* court performed an extensive analysis of the relevant case law, noting a number of cases in which license agreements/settlement agreements were excluded and held inadmissible under FRE 403 because of the risk they would confuse a jury as to the question of a reasonable royalty:

> It is a century-old rule that royalties paid to avoid litigation are not a reliable indicator of the value of a patent, and should therefore be disregarded when determining reasonable royalty rates." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 860 F.Supp. 1448, 1452 (C.D.Cal.1993). As the Supreme Court articulated this principle:
>
>> It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements

---

royalty.  Furthermore, in the days following that call, Ms. Hoffer has not indicated any other reason for which she is seeking the subpoenaed materials.

> patented may induce the payment in such cases. The
> avoidance of the risk and expense of litigation will always
> be a potential motive for a settlement.

*Rude v. Westcott*, 130 U.S. 152, 164, 9 S.Ct. 463, 32 L.Ed. 888 (1889); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 n. 11 (6th Cir.1978) (observing "[l]icense fees negotiated in the face of a threat of high litigation costs 'may be strongly influenced by a desire to avoid full litigation' " (quoting *Rude,* 130 U.S. at 164)). This district has similarly found "settlements[ ] and licenses made under the threat of litigation ... would likely confuse the jury .... [and are] inadmissible under Federal Rule of Evidence 403." *Spreadsheet Automation Corp. v. Microsoft Corp.,* 587 F.Supp.2d 794, 801 (E.D.Tex.2007). "Where a license agreement thus arises under the threat of litigation, it has ***little relevance*** to the hypothetical reasonable royalty simulation." *Pioneer Corp. v. Samsung SDI Corp.,* No. 2:06-cv-384, slip op. at 9 (E.D.Tex. Oct. 2, 2008) (internal quotation omitted) (emphasis original). "[E]ven if negotiations, offers, and agreements reached under the threat of litigation had some probative value, such value would be too slight and clearly outweighed by the danger of unfair prejudice and confusion." *Id.* at 10.

This district is not alone in "elaborat[ing] on the admissibility of third party license agreements negotiated against a backdrop of litigation." *Cornell Univ. v. Hewlett-Packard Co.,* No. 5:01-cv-1974, slip op. at 4 (N.D.N.Y. May 14, 2008) (J. Rader, sitting by designation) (finding an agreement that "arises under the threat of litigation ... has little relevance to the hypothetical reasonable royalty situation"). Settlement agreements are generally not relevant "because in the usual course they do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction." *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.Supp.2d 147, 159 (D.R.I.2009); *see also Cornell,* at 8 (agreements made under threat of litigation "do not speak 'to the amount which a prudent licensee ... would have been willing to pay as a royalty" (quoting *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970)). Moreover, parties are prejudiced by being forced to litigate the "similarities and differences in the facts regarding the 'same' claims against other defendants to determine what, if any, light the [settlement agreement] sheds on the value of the claim against [this defendant]." *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.,* 219 F.R.D. 135, 144-45 (N.D.Iowa 2003).

District courts routinely exclude settlement licenses because the potential prejudice and jury confusion substantially outweigh whatever probative value they may have. *See St. Clair Intellectual Prop. Consultants, Inc. v. Fuji Photo Film Co.,* 674 F.Supp.2d 555, 559 (D.Del.2009) (denying motion for new trial based on court's exclusion of settlement agreements

pursuant to Rule 403); *Creative Internet Adver. Corp. v. Yahoo! Inc.*, No. 6:08-cv-354, slip op. at 5-6 (E.D.Tex. May 7, 2009) (finding settlement agreement inadmissible); *Uniloc*, 632 F.Supp.2d at 159 (excluding settlement agreements because "whatever relevance the evidence could have as to [a] reasonable royalty is substantially outweighed by the unfair prejudice to [the defendant] and juror confusion that would likely result"); *Honeywell Int'l, Inc. v. Nikon Corp.*, No. 04-1337, 2009 WL 577274, at * 1 (D.Del. Mar.4, 2009) (excluding licenses under Rule 403); *Gen. Elec. Co. v. DR Sys., Inc.*, No. 06-5581, 2007 WL 1791677, at *2 (E.D.N.Y. June 20, 2007) (noting "settlement agreements reached to resolve litigation or threatened litigation are generally not relevant to the issue of what may constitute a reasonable royalty"); *Pioneer*, 219 F.R.D. at 144-45 (alternatively excluding settlement agreement pursuant to Rule 403); *Mickowski v. Visi-Trak Corp.*, 36 F.Supp.2d 171, 181 (S.D.N.Y.1999) (observing "a license entered into in settlement of litigation may not accurately reflect the royalty that the parties would have negotiated prior to commencement of litigation"); *Donnelly Corp.*, 918 F.Supp. at 1134 (finding settlement agreements "more prejudicial than probative" and excluding them under Rule 403); *Wang Labs.*, 860 F.Supp. at 1452 (finding agreements made "in anticipation of litigation cannot be relied upon to prove a reasonable royalty rate").

*Fenner*, 2010 WL 1727916 at **1-2.

If settlement and licensing agreements are inadmissible at trial under FRE 403, then they do not fall within the proper scope of discovery under Rule 26(b)(1) because they are neither relevant, nor can they lead to the discovery of admissible evidence. While the general rule is that the admissibility of evidence at trial under FRE 403 does not govern the standards of discovery under Rule 26, in this particular case, the Court should take notice that the decisions cited by the *Fenner* court hold that settlement and licensing agreements have no relevance to the calculation of a reasonable royalty. Because Defendants seek the subpoenaed materials for this sole purpose, they are not discoverable.[3]

---

[3]    Even if Defendants were to argue that the subpoenaed materials are somehow relevant or reasonably calculated to lead to the discovery of admissible evidence with regard to issues unrelated to the reasonable royalty calculation, case law holds that in

DVSI anticipates that Defendants will rely upon a recent Federal Circuit case, *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 872 (Fed. Cir. 2010), as support for their claim that the settlement agreement and related materials should be produced.  However, while *ResQNet* contains a brief snippet of dicta that may be attractive to Defendants, the case cannot reasonably be read to undo more than 100 years of precedent, including that from the United States Supreme Court.  This specific line of dicta reads, "This court observes as well that the most reliable license in this record arose out of litigation." *ResQNet id.* at 872.  However, that sentence is immediately followed by the following qualification:

> On other occasions, this court has acknowledged that the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983).

*Id.*

An important distinction between *ResQNet* and the instant case is that the license agreement in *ResQNet* which "arose out of litigation" was already in the record, *and its admissibility was not contested*.  In combination with other licenses, it was relied upon by the plaintiff's expert in its calculation of what it contended was a reasonable royalty.  The other licenses relied upon by that expert as evidence of a reasonable royalty had nothing to do with the patents in suit and therefore were less reliable than the one which arose out of litigation.  Thus, the *ResQNet* court's identification of the litigation-sourced license as the "most reliable" is merely a comparative statement and should not be

---

seeking settlement communications, Defendants would have to make a heightened and more "particularized showing that the evidence sought is relevant and calculated to lead to the discovery of admissible evidence." *Ford Motor Co. v. Edgewood Properties, Inc.,* 257 F.R.D. 418 at **4 (D.N.J. 2009) (quoting *Lesal Interiors v. Resolution Trust Corp.,* 153 F.R.D. 552, 562 (D.N.J.1994).

misread as a validation of the use of such licenses in calculating reasonable royalties. Also, because ResQNet involved a bench trial and not a jury trial, it has no bearing on a proper FRE 403 analysis which must focus on juror confusion and prejudice. *Id.* at 863.

In the instant case, DVSI will not rely on the settlement agreement with Walden or the related communications and negotiations as evidence of what constitutes a reasonable royalty. The experts in this case have not yet been deposed or provided reports, but DVSI's experts will not base their calculation of a reasonable royalty on the license provided to Walden in a confidential settlement of numerous disputed matters. Furthermore, because this case is set for a jury trial, the confusion and prejudice concerns under FRE 403 are quite real.

The *Fenner* court's discussion of *ResQNet* recognizes these same distinctions:

> Contrary to Defendants' assertion, the recent *ResQNet* decision has not altered the admissibility of agreements entered into under the threat of litigation. In *ResQNet,* the litigation-related licenses were part of the record and their admissibility was not before the court. 594 F.3d at 872. Moreover, the court's comment that a litigation license was "the most reliable license" was made in the context of evaluating an expert's reliance on allegedly comparable licenses under the first *Georgia-Pacific* factor. *Id.* at 869-72. That "factor considers past and present licenses to the ***actual patent*** and the ***actual claims*** in litigation." *Id.* at 869 (emphasis added). For analysis of that factor, the court found a litigation license was more reliable than licenses which may have concerned comparable technology, *id.* at 871 n. 1 (noting the expert described the licenses as covering products merely "based on the technology described in the patents in suit" (quotation omitted)), but which did not "embody or use the *claimed* technology." *Id* . at 871-72 (emphasis added). Here, Plaintiff's expert is utilizing purportedly comparable licenses based on the twelfth *Georgia-Pacific* factor, *i.e.,* consideration of "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions." *Georgia-Pacific,* 318 F.Supp. at 1120. Finally, the Court notes the litigation licenses in *ResQNet* did not raise the concern of jury confusion because they had been admitted during a bench trial, whereas the parties here will try this case to a jury. *Id.* at 863; *see also Honeywell,* 2009 WL 577274 at *2 (reporting "the Court ... is unable to identify any

cases, either from this District or the Federal Circuit, in which licenses taken under threat of litigation were given significant weight, *particularly in jury cases"* (emphasis added)). Thus, *ResQNet* is distinguishable and does not compel the admission of evidence and testimony relating to settlement agreements in prior litigation.

*Fenner*, 2010 WL 1727916 at *3.

Two other, earlier Eastern District of Texas cases examined *ResQNet*, but both read ResQNet's dicta far too broadly. *See Tyco Healthcare Group LP v. E-Z-EM, Inc.*, 2010 WL 774878 (E.D. Tex. Mar. 2, 2010); *Datatreasury Corp. v. Wells Fargo & Co.*, 2010 WL 903259 (E.D. Tex. Mar. 4, 2010). These cases claim that *ResQNet* now stands for the proposition that litigation-related licenses should generally be considered in determining a reasonable royalty and, thus, are discoverable. The more recent *Fenner* case out of the same district contradicts this position and reads *ResQNet* dicta correctly as to not disrupt longstanding precedent. *Fenner*, 2010 WL 1727916 at *3.

## MOTION TO QUASH

Pursuant to Rule 45(c)(3)(A)-(B), a party affected by a subpoena may file a motion to quash. Here, DVSI is affected by the subpoena served on Walden because that subpoena seeks the confidential settlement agreement and related materials between Walden and DVSI. As discussed above, the information sought by the subpoena is irrelevant and inadmissible and, thus, it is not properly the subject of discovery. Also, requiring the production of such material will subject DVSI to the undue burden of expending additional resources to contest the admissibility of the produced confidential materials at trial and to preserve its objections relating to that information at every step of the way, including during depositions and with regard to any additional written discovery propounded. Therefore, this Court should quash Defendants' subpoena.

## ALTERNATIVE MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 26(c)(1), on the motion of a party, a court may, for good cause shown, issue an order to protect a party from undue burden, including discovery and forbidding inquiry into certain matters. As discussed above, the information sought by Defendants' subpoena is not the proper subject of discovery under Rule 26(b)(1) because it seeks documents that are neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence, and their disclosure will violate the privacy interests of DVSI. Specifically, the purpose stated by Capella's counsel for the production of these materials – to establish a reasonable royalty – is not a valid purpose for the disclosure of confidential settlement materials, including licenses entered into in connection with the settlement of a patent claim. Therefore, good cause exists for the entry of a protective order.

## CONCLUSION

For the foregoing reasons, DVSI respectfully requests that the Court quash Defendants' subpoena served on Walden or, in the alternative, enter a protective order preventing the production of the materials sought by the subpoena.

**Dated:  June 11, 2010**

**Respectfully submitted,**

Stephen L. Neal, Jr., Esq.
Federal Bar No. 24610
**DIMUROGINSBERG, P.C.**
908 King Street, Suite 200
Alexandria, VA 22314
Phone: (703) 684-4333
Fax: (703) 548-3181
E-Mail: sneal@dimuro.com

*Counsel for DVSI*